IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX BELFI, :<br>    Plaintiff, :<br>                  :<br>v.                    :<br>                    :<br>RADIUS BANCORP, *et al.* :<br>    Defendants. : | CIVIL ACTION NO. 21-CV-5672 |

**MEMORANDUM**

**PADOVA, J.**                                                                                     **JANUARY 10, 2022**

       Alex Belfi filed this civil action pursuant to 42 U.S.C. § 1983 asserting constitutional and state law claims. Named as Defendants are Radius Bancorp ("Radius"), Aspiration Financial, LLC ("Aspiration"), Thomas Wagner, Meredith Lussier, Judge Nina Wright Padilla, Judge Patricia McInerney, Michael Quigley, and Tracy Kosakowski. Belfi seeks to proceed *in forma pauperis* in this case. For the following reasons, the Court will grant Belfi leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTUAL ALLEGATIONS**

       Belfi alleges that in 2017 a non-defendant named Mary Elizabeth Brophy forged his signature on a partnership agreement claiming a 50.1% interest in real estate. (ECF No. 1 at 2.)[1] Later, Brophy filed a complaint in the Philadelphia Court of Common Pleas claiming damages arising from the agreement. (*Id.*) Allegedly without prior notice to Belfi, the Court entered an order on June 6, 2018 freezing Belfi's account at Defendant Aspiration, for which Defendant

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Radius was the holding bank. (*Id.*) Belfi's veteran's disability benefits were allegedly deposited into that account and he was never provided an opportunity to be heard on his claim that those benefits were exempt from any order freezing his assets. (*Id.*) Defendants Wagner and Lussier, who are identified as attorneys for the law firm of Marshall Dennehey and, apparently, acting on behalf of Brophy, contacted Defendant Quigley, the risk management director of Radius, to enforce the court order. (*Id.* at 3.) Wagner allegedly coerced and conspired with Quigley during a phone call on June 7, 2018 into disclosing Belfi's personal financial information, account balances, and bank transactions. (*Id.*) Quigley then acknowledged in an email to the attorneys that he froze Belfi's account in expectation of receiving a subpoena to release account information. (*Id.*) The subpoena was filed on July 10, 2018, but Belfi contends he never received notice of it.

     Belfi asserts that he appeared at a hearing before Defendant Judge Patricia McInerney on June 11, 2018 to present evidence that the signature on the partnership agreement was forged. (*Id.*) He later discovered the purpose of the hearing was to consider a contempt charge against him for using funds deposited in his account at Defendant Aspiration. (*Id.*) Judge McInerney allegedly threatened him with incarceration if he did not provide information about his assets. (*Id.*) She ordered Belfi to turn over the deed and leases for a property in Philadelphia and issued a *lis pendens* on the property. (*Id.*) She also attempted to coerce him into withdrawing funds from an allegedly exempt 401k account he maintained. (*Id.* at 4.) Thereafter, Defendant Judge Padilla became the presiding judge. (*Id.*)

     Belfi emailed Aspiration in July 2018 seeking to have his veteran's benefits unfrozen, but its representative responded that a court order prevented the release of any funds. (*Id.*) Wagner and Lussier filed another motion to hold Belfi in contempt for attempting to unfreeze his benefits via these communications. (*Id.*) While a hearing on the motion was scheduled, it was delayed

because Belfi filed a motion to remove Marshall Dennehey as attorney for Brophy due to an alleged conflict of interest. Exhibits presented by Wagner and Lussier allegedly showed they communicated with Quigley and Defendant Kosakowski of Radius to get them to agree to freeze Belfi's account without performing a review as required by banking regulations. (*Id.*) Belfi also learned that Wagner, Lussier and Radius were conspiring to garnish the funds in the account. (*Id.*) Belfi filed complaints with the Federal Reserve System and the Office of the Comptroller of the Currency ("OCC"). (*Id.* 4-5.) The OCC responded to Belfi that the account freeze was proper due to the court order. (*Id.* at 5.)

After Belfi's attorney withdrew from the case due to lack of payment, Judge Padilla informed Belfi that he would be subject to a contempt charge. (*Id.*) Belfi then attempted to remove the case from the Court of Common Pleas to this Court, but the case was later remanded. (*Id.*) On September 19, 2019, Wagner sent Belfi a mutual release of claims, allegedly acknowledging that Defendants' actions caused Belfi damage, and attempted to use his frozen benefits as leverage to get him to sign the release, which he refused to do. (*Id.* at 6.) A trial commenced in November 2019 in Common Pleas Court before Judge Padilla where, although Belfi presented evidence his signature had been forged, Padilla "enabled an unregistered fictitiously named entity to enforce a fraudulent contract using the courts of Pennsylvania." (*Id.*) Belfi's subsequent appeal was quashed in April 2020 because he failed to file post-trial motions and a Rule 1925 statement of issues presented on appeal. (*Id.*)

In Claim 1 of his Complaint, Belfi asserts a claim pursuant to § 1983 based upon an alleged search and seizure of his personal property, presumably his veteran's benefits.[2] (*Id.* at

---

[2] In addition to citing § 1983 in Claim 1, Belfi cites 38 U.S.C. § 5301. This latter statute provides that veteran's benefit payments are non-assignable and "exempt from the claims of all creditors." While the statute is intended to be used as a defense to garnishment and other collection efforts in the satisfaction of a judgment, *see e.g.*, *Younger v. Mitchell*, 777 P.2d 789,

8.) He alleges that Wagner and Lussier were "acting as officers of the court, clothed with court authority and coercive powers of the state" when they enforced the June 6 court order freezing his account. (*Id.*) He also asserts in the claim that Radius, Aspiration, Quigley and Kosakowski are liable because they failed to perform an account review pursuant to OCC regulations to learn that his veteran's benefits were in the account. (*Id.* at 9.) In Claim 2, Belfi asserts a separate claim alleging a due process violation against all Defendants because he failed to receive an opportunity to be heard in state court on the issue of whether exempt funds were in his account before it was frozen. (*Id.* at 10.) In Claims 3 and 4, Belfi asserts claims under § 1983 and the Pennsylvania Constitution respectively for violation of his right to privacy against Wagner and Lussier based upon their issuing a subpoena for his bank records, and against Radius, Aspiration, Quigley and Kosakowski for responding to the subpoena. (*Id.* at 10-12.) In Claim 5, he asserts a claim under 42 U.S.C. § 1985 against Judges McInerney and Padilla and the other named Defendants based on the Judges' allegedly having "conspired with and effectuated the defendants' goals." (*Id.* at 12-13.) Finally, in Claims 6, 7, and 8, Belfi asserts state law claims for conversion, intentional infliction of emotional distress, and negligent infliction of emotional distress. (*Id.* at 13-15.) Belfi seeks money damages.[3]

---

793 (Kan. 1989) (holding that veteran's disability benefits are exempt from garnishment under the statute), the Court has been unable to find any statutory language or case law providing that the statute creates a cause of action against a party that has sought to garnish exempt funds. Accordingly, to the extent Belfi attempts to assert a cause of action for violation of § 5301, that claim will be dismissed.

[3] Belfi also seeks a declaration that his rights were violated. However, declaratory relief is unavailable to adjudicate past conduct, so Belfi's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). Belfi also seeks to enjoin future violations of his rights. However, he fails to allege any facts upon which to

## II.    STANDARD OF REVIEW

The Court grants Belfi leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d

---

conclude plausibly that the Defendants threaten to continue to violate his rights since all factual allegations concern events occurring no later than 2020.
 Finally, Belfi seeks injunctive relief in the form of an immediate release of his funds. That is not a form of relief this Court can grant.  Belfi asserts the alleged freeze on his funds was ordered by the Court of Common Pleas.  Since Belfi appears to assert the state court litigation has ended adverse to his interests in that his appeal was quashed, that form of relief would be barred pursuant to the *Rooker-Feldman* doctrine.  Under that doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  Based on that principle, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 166 (quotations omitted).  Additionally, since the request for injunctive relief centers on the ownership of money, any injury Belfi suffered cannot plausibly be deemed to be irreparable. *See Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 417 (E.D. Pa. 2013) ("Irreparable harm is injury that cannot adequately be compensated by monetary damages.")

768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Belfi is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

#### A. Section 1983 Claims

Belfi asserts both constitutional claims and state law claims.  The vehicle by which all federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Because the named Defendants are either not "state actors" liable under § 1983, or are absolutely immune from suit under § 1983, Belfi's § 1983 claims asserting a search and seizure of his personal property, due process violations, and violations of his right to privacy must be dismissed.

#### 1. Non-state Actor Defendants

Belfi names as Defendants two private financial entities, Radius and Aspiration, two employees of those entities, Quigley and Kosakowski, and two attorneys in private practice, Wagner and Lussier.  Radius, Aspiration, Quigley, and Kosakowski are alleged to have frozen Belfi's account in response to a court order and responded to a subpoena requesting information about Belfi's assets.  Wagner and Lussier, apparently in the course of their representation of Brophy, brought the lawsuit in which the court order and the subpoena were issued.

Whether a private entity is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State

itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The test imposed for determining whether a private party is exercising a traditionally exclusive public function is "a rigorous standard that is rarely satisfied for while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001) (internal quotations and alterations omitted) (holding that private school at which plaintiff was placed as a minor by the Department of Human Services was not a state actor); *see also Leshko*, 423 F.3d at 347 (foster parents were not exercising a traditionally exclusive public function and were not state actors despite contractual relationship with social services agency).

      Nothing allegedly done by these private entities and individuals constitute state action under the above tests. Moreover, private attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of § 1983. *Angelico v. Lehigh Valley Hosp.*,

7

*Inc.*, 184 F.3d 268, 278 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Likewise, an attorney does not become a state actor simply by employing the state's subpoena laws. *Id.* (citing *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) (stating that "[i]f an attorney does not become a state actor merely by virtue of instigating state court litigation, then the attorney does not become a state actor merely by employing state authorized subpoena power."). Finally, private entities and their employees do not become "state actors" because they, as alleged here, simply comply with what one party contends is an improper court order with or a subpoena requiring them to turn over evidence in a civil proceeding. *See generally*, *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); Carter *v. Kane*, 717 F. App'x 105, 109 (3d Cir. 2017) (holding that witnesses are absolutely immune from damages liability based on their testimony); *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) ("Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful.") (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (internal quotations omitted). Accordingly, Belfi's § 1983 claims against Radius, Aspiration, Quigley, Kosakowski, Wagner, and Lussier are dismissed with prejudice.

### 2.  **Judicial Defendants**

To the extent Belfi seeks to assert civil rights claims under § 1983 or § 1985 against Judges Padilla and McInerney, those claims are also dismissed with prejudice. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir.

2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Because the actions allegedly taken by Judges Padilla and McInerney were all normal functions done in their judicial capacity in a case over which they properly exercised jurisdiction as judges of the Court of Common Pleas, they are absolutely immune from suit.

      **B.**     **Section 1985 Claim**

42 U.S.C. § 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997). While there is no "state actor" requirement like for § 1983, significantly, "'[t]he [statutory] language [in § 1985] requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Moreover, a plaintiff must allege specific facts in order to sustain a § 1985(3) claim:

9

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *see also Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient.").

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (*per curiam*) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)).

Belfi's § 1985 claim fails for various reasons. First, as already noted, Judges Padilla and McInerney are absolutely immune from liability on the claim. As for the other Defendants, Belfi has not alleged they were motivated by a racial or class based discriminatory animus designed to deprive him of the equal protection of the laws. Rather, Belfi makes no allegation whatsoever about racial animus being a motivating factor and there is no other plausible suggestion that their alleged acts attempting to seize his exempt veteran's benefits was motivated by an animus condemned by the statute. Finally, his conspiracy allegations centering on the parties'

10

involvement with a case filed in the Court of Common Pleas are not plausible. *See Capogrosso*, 588 F.3d at 185).

        **C.**        **State Law Claims**

Because the Court has dismissed Belfi's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over his state law claims for violation of the Pennsylvania Constitution, conversion, intentional infliction of emotional distress, and negligent infliction of emotional distress. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Belfi alleges he is a citizen of Pennsylvania. He fails to allege the citizenship of the corporate entities and individuals he has named as Defendants, but he does allege that Judges Padilla and McInerney are judges of the Philadelphia Court of Common Pleas and that Defendant Wagner maintains a law office in Philadelphia. This suggests that some, if not all, of the Defendants are Pennsylvania citizens. Accordingly, Belfi has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. Those claims, accordingly, will be dismissed without prejudice for lack of jurisdiction.

An appropriate Order follows.[4]

**BY THE COURT:**


_/s/ John R. Padova_____
**JOHN R. PADOVA, J.**

---

[4] Because none of Belfi's claims proceed past statutory screening, his Motions for appointment of counsel and for permission to file electronically, will be denied.